STATE OF MINNESOTA

IN SUPREME COURT

A13-2353

McLeod County                                                           Lillehaug, J.
                                                              Took no part, Anderson, J.

State of Minnesota,

                    Respondent,

vs.                                                              Filed:  July 30, 2014
                                                              Office of Appellate Courts
Toby Earl Johnson,

                    Appellant.

_____

Lori Swanson, Attorney General, Saint Paul, Minnesota; and

Michael K. Junge, McLeod County Attorney, Elizabeth Smith, Assistant County Attorney, Glencoe, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Charles F. Clippert, Special Assistant State Public Defender, Saint Paul, Minnesota, for appellant.
_____

S Y L L A B U S

1.     This court will not consider appellant's argument that the district court improperly ordered restitution for a loss already reimbursed by an insurance company because the argument was made first on appeal.

2.     Because Minn. Stat. § 611A.04 (2012) provides that victims can be reimbursed for "losses resulting from the crime," the district court erred in using the

1

outstanding value of a promissory note secured by the victim's car as the measure of loss rather than the actual diminution in value caused to the car from the crime.

3.      When a victim sustains indivisible loss from multiple defendants' actions, the sentencing court has the authority to order restitution based on joint and several liability.

Affirmed in part, vacated in part, and remanded.

Considered and decided by the court without oral argument.

O P I N I O N

LILLEHAUG, Justice.

Appellant Toby Earl Johnson challenges a restitution order entered against him after he was convicted of aiding and abetting the first-degree premeditated murder of Randy Pool. This matter comes to us under our authority to hear sentencing appeals in first-degree murder cases. *See State v. Jones*, 678 N.W.2d 1, 23 (Minn. 2004); *State v. Warren*, 592 N.W.2d 440, 451 (Minn. 1999). Johnson raises three issues before this court. First, he argues that the restitution order improperly included restitution for losses for which an insurance company had already reimbursed Pool's estate. Second, he argues that the order improperly calculated the restitution Johnson and his codefendants should pay for damage done to Pool's car. Third, he argues that the district court did not have statutory authority to order that the codefendants are jointly and severally liable for the restitution award. We affirm in part, vacate in part, and remand to the district court for further proceedings.

I.

On April 10, 2000, appellant Toby Earl Johnson pleaded guilty to one count of aiding and abetting first-degree premeditated intentional murder, *see* Minn. Stat. §§ 609.05, .185(a)(1) (2012) (renumbered in 2002; previously designated as section 609.185(1)) for his role in the July 1999 murder of Randy Pool. Johnson helped a group of people kidnap, beat, and murder Pool over the course of 3 days.[1] *Johnson v. State*, 641 N.W.2d 912, 913-14 (Minn. 2002). At the time of his arrest, Johnson admitted to police that he had beaten and watched over Pool, that he was present when Pool was killed, and that he stayed behind to clean up Pool's house while others disposed of the body. *Id.* at 914-15. During his plea hearing, Johnson also said he was "instrumental" in disposing of Pool's car.

After Johnson pleaded guilty, Pool's family submitted a restitution request on behalf of Pool's estate, claiming a total financial loss of $13,253.80. *See* Minn. Stat. § 611A.04, subd. 1 (2012); *see also* Minn. Stat. § 611A.01(b) (2012) (defining "victim" to include family members of a deceased person). The family asserted that the crime cost the estate $3,480 in house repairs, $5,485.39 in personal property damage, $1,500 in house closing costs, $3,080.41 for the loss of Pool's car, and $800 in legal fees. The family also asserted that Pool's insurance company had reimbursed the estate for $7,468.48, but it is not clear from the record whether the family's request included or excluded this amount.

---

[1] Johnson also pleaded guilty to a second-degree murder count, Minn. Stat. § 609.19, subd. 1(1) (2012). *See Johnson v. State*, 801 N.W.2d 173, 174 n.1 (2011).

As part of the loss claimed, the family requested $3,080.41 for Pool's car, which they said had been "totaled." That number reflected how much the estate owed a bank on a promissory note secured by the car. According to a letter from the attorney for Pool's estate to the bank, the windshield, the driver's window, and the trunk lock were broken; the keys were missing; and the car did not run. The letter said "[t]here was insurance on the automobile but it had a $1,000 deductible. The insurance company states that the car is not worth $1,000 and therefore, has not paid anything toward the damages."

At Johnson's sentencing hearing, the district court convicted Johnson of first-degree premeditated murder under Minn. Stat. §§ 609.05, .185(a)(1),[2] under an aiding and abetting theory, and sentenced him to a mandatory life sentence with the possibility of release after 30 years. The court said that it would order restitution a few weeks later.

On October 9, 2008—more than eight years later—the district court issued its restitution order. The court noted that Johnson's codefendant Heather Ecklund had been ordered to pay restitution for the crime, and adopted the order from Ecklund's case. The court also ordered that Johnson be jointly and severally liable for paying restitution along with five of his codefendants, including Ecklund. The adopted order outlined the following restitution payments:

---

[2] The court actually said that it was convicting Johnson of murder in the first degree premeditated and then cited Minn. Stat. § 609.19, subd. 1(1), the second-degree murder statute, but the district court has since held that the judge read the wrong statute because of a clerical mistake. The district court held that it "intended to sentence Defendant to the charge of Murder in the First Degree Premeditated under Minnesota Statutes Section 609.185(a)(1) and Minn. Stat. § 609.05," and that this intent "is shown through the pronouncement of a conviction for the charge of first degree murder. It is also shown through the imposed sentence, which is the sentence for first degree murder."

$7,468.48 for house repairs ($3,988.48 reimbursement of insurance company);
$5,485.39 for personal property loss;
$3,080.41 for loss of automobile;
$1,500 transactional costs in sale of house;
$800 legal fees and estate costs in closing estate;
$4,725.94 reimbursement to the Minnesota Crime Victims Reparations Board.

$23,060.22 TOTAL

On June 4, 2013, the district court issued an order saying that it would hold a restitution hearing for four of the defendants, including Johnson, because "[q]uestions have arisen as to the amount of restitution each should pay and whether the restitution is Joint and Several for each of the Defendants." Johnson filed a pro-se "request for relief" with the court before the hearing. Among other challenges to the order, he argued that joint and several liability was not proper in restitution. Contending that the award should be split into six portions, Johnson asserted that joint and several liability "does not hold any fairness or equality under economical standards of justice." Johnson also challenged the court's valuation of the car.

On September 17, 2013, after the hearing, the district court affirmed the original restitution order as to Johnson and three of his codefendants, noting that another three codefendants had completed their sentences so the court could not order them to pay restitution. *See* Minn. Stat. § 611A.04, subd. 1(b) ("The court may amend or issue an order of restitution after the sentencing or dispositional hearing if . . . the offender is on probation, committed to the commissioner of corrections, or on supervised release . . . ."). The court also declined defendants' request to split the restitution award equally among them, saying "[t]his is simply not how restitution works." The

court said joint and several liability "is the standard when co-defendants are found to owe restitution," and "makes sure that the priority is on compensating the victims of a crime." Johnson appealed to this court.

## II.

We turn first to Johnson's argument that the district court improperly awarded the Pool estate restitution for losses for which it had already been compensated by the insurance company. As a threshold matter, we must decide if Johnson has forfeited this argument. He did not raise this issue before or during the hearing on the restitution award, nor has he ever raised it in his many communications with the district court. *See Johnson v. State*, 673 N.W.2d 144, 147 (Minn. 2004).

Generally, we will not consider arguments that are made for the first time on appeal. *Greene v. Comm'r of Minn. Dep't of Human Servs.*, 755 N.W.2d 713, 725 n.9 (Minn. 2008). One purpose of this rule is to encourage the development of a factual record at the district court level. *Johnson*, 673 N.W.2d at 147. The rule, however, is not absolute, and we can address issues in the interests of justice as long as doing so will not unfairly surprise the other party. *Id.*

But none of the factors that we generally consider relevant to hearing a case in the "interests of justice" are present here, and several factors caution against granting review. First, whether the district court included money that the insurance company had already paid the estate is a question of fact that was not developed below. *See, e.g.*, *Johnson*, 673 N.W.2d at 148. Second, this issue does not involve any important liberty interests or pressing matters of statewide concern. *See, e.g.*, *State v. Henderson*, 706 N.W.2d 758,

760 (Minn. 2005); *State v. Profit*, 591 N.W.2d 451, 462 (Minn. 1999). Third, it is impossible to tell whether this issue is even ripe for consideration. *See State v. Palubicki*, 727 N.W.2d 662, 667-68 (Minn. 2007) (holding that an issue was not yet ripe for consideration when a defendant argued that requiring him to pay a certain kind of restitution would lead to a double recovery on the part of the victim's family, because the victim's children had "not yet received payment in excess of their economic loss").

Johnson's failure to raise the issue below did not give the district court an opportunity to clarify the restitution order in light of the insurance award. Accordingly, we hold that Johnson has forfeited the issue.

III.

We turn next to Johnson's argument that the district court improperly ordered him to pay $3,080.41 for the victim's car. He argues that the court used the value of an outstanding promissory note, secured by the car, as the value of the car, rather than calculating the actual damage the defendants caused. Whether the district court used the proper measure of loss is a question of law, which we review de novo. *See City of Moorhead v. Red River Valley Coop. Power Ass'n*, 830 N.W.2d 32, 36 (Minn. 2013).

When someone is convicted of a felony, the district court can order restitution to the victim as part of the criminal sentence. *See* Minn. Stat. § 609.10, subd. 1(a)(5) (2012). Minnesota Statutes § 611A.04 provides that a restitution request from victims "may include, but is not limited to, any *out-of-pocket losses* resulting from the crime . . . ." (Emphasis added). The burden of demonstrating the amount of loss sustained by a victim is on the prosecution. Minn. Stat. § 611A.045, subd. 3(a) (2012) (renumbered

7

in 1999; previously designated as section 611A.045, subdivision 3).  The record must provide the court with a factual basis to award restitution.  *See State v. Gaiovnik*, 794 N.W.2d 643, 651 (Minn. 2011).  A dispute over the proper amount of restitution must be resolved by the district court by a preponderance of the evidence.  Minn. Stat. § 611A.045, subd. 3(a).

The primary purpose of restitution is to "restore crime victims to the same financial position they were in before the crime."  *Palubicki*, 727 N.W.2d at 666. Applying this standard, the district court erred by using the value of the outstanding promissory note as the value of the car rather than calculating the actual loss that defendants' actions caused.  If this crime had not happened, Pool would have had to repay the bank what he owed on the promissory note regardless of how much or how little the car was worth.  To put the estate in the same financial position Pool was in before the crime, the measure of loss should be the actual damage defendants caused to the car.

As a factual matter, the State has not met its burden to show the damage to the car by a preponderance of the evidence.  *See* Minn. Stat. § 611A.045, subd. 3(a).  The record does not support the State's contention that the value of the promissory note was a good proxy for the actual value of the car.  The record is not sufficiently detailed to establish how much the car was worth either before or after the murder.  The only information in the record about the car's value is the second-hand assertion of an attorney for the estate that the insurance company said the car was "not worth $1,000."  There is simply no evidence in the record to support the contention that the defendants caused $3,080.41 in

8

damage to the car. Therefore, we vacate that portion of the restitution award and remand to the district court for further fact-finding on the actual damage the defendants caused to the car.

IV.

Finally, we turn to Johnson's assertion that the district court did not have the statutory authority to order that restitution liability be joint and several. Johnson argues that, while district courts may have broad discretion in determining an appropriate award of restitution, Minn. Stat. § 611A.04 does not authorize a district court to order that restitution be joint and several. The State, however, argues that in crimes involving multiple codefendants "there is no reason to hold that restitution cannot be joint and several as long as a sufficient factual basis underlies" the order. Whether Minnesota law permits courts to order joint and several liability for restitution is a question of law, which we review de novo. *See City of Moorhead*, 830 N.W.2d at 36.[3]

In the civil context, Minnesota common law has long provided that parties whose concurrent negligence causes injury are jointly and severally liable for the resulting damages. *See Maday v. Yellow Taxi Co. of Minneapolis*, 311 N.W.2d 849, 850 (Minn. 1981) ("It has always been the law of this state that parties whose negligence concurs to cause injury are jointly and severally liable although not acting in concert."); *Flaherty v. Minneapolis & St. Louis Ry. Co.*, 39 Minn. 328, 329, 40 N.W. 160, 160-61 (1888). The

---

[3] The State argues that Johnson waived this argument by not addressing it below. But the record shows that Johnson repeatedly argued that joint and several liability was not appropriate for him and his codefendants, and the district court's order specifically considered the topic.

rule of joint and several liability places the interests of an innocent party above the interests of those who caused the damage. *See Mathews v. Mills*, 288 Minn. 16, 22, 178 N.W.2d 841, 845 (1970). And even though the Legislature has limited contributions to awards in the civil context, Minn. Stat. § 604.02 (2012), there is no question that joint liability continues to apply to those who act in concert. *See* Minn. Stat. § 604.02, subd. 1(2) ("two or more persons who act in a common scheme or plan that results in injury"); *Id.*, subd. 1(3) (intentional torts).

In the criminal context, we hold today that when a victim sustains indivisible loss from multiple defendants' actions, the sentencing court has the authority to order restitution based on joint and several liability.[4] In this case, Johnson pleaded guilty and was convicted of aiding and abetting first-degree murder under Minn. Stat. §§ 609.05, .185(a)(1). In his petition to enter a guilty plea, he certified that he understood that "a person who participates in a crime by intentionally aiding, advising, counseling and conspiring with another person or persons to commit a crime is just as guilty of that crime as the person or persons who are present and participating in the crime when it is actually

---

[4] We are not alone in holding that joint and several liability is appropriate for criminal restitution when more than one defendant contributes to a victim's loss. *See, e.g.*, *United States v. Hunter*, 52 F.3d 489, 494-95 (3d Cir. 1995); *United States v. Harris*, 7 F.3d 1537, 1540 (10th Cir. 1993); *United States v. Chaney*, 964 F.2d 437, 453-54 (5th Cir. 1992); *United States v. Van Cauwenberghe*, 827 F.2d 424, 436 (9th Cir. 1987); *United States v. Tzakis*, 736 F.2d 867, 871 (2d Cir. 1984); *R.S. v. Commonwealth*, 423 S.W.3d 178, 188-89 (Ky. 2014); *State v. LaCasce*, 512 A.2d 312, 315 (Me. 1986); *State v. Workman*, 107 P.3d 462, 465 (Mont. 2005); *People v. Kim*, 694 N.E.2d 421, 423 (N.Y. 1998); *State v. Hughes*, 5 A.3d 926, 929-30 (Vt. 2010). Several of these states allow joint and several liability for criminal restitution despite the absence of statutory language permitting it. *See LaCasce*, 512 A.2d at 315; *Kim*, 694 N.E.2d at 423; *Hughes*, 5 A.3d at 929-30.

committed." It is black-letter law in Minnesota that those who help others commit crimes are just as responsible for the crimes as those who commit them. *See* Minn. Stat. § 609.05. Accordingly, the district court had authority to hold Johnson, an accomplice responsible for the crimes of his codefendants, jointly and severely liable for the victim's indivisible loss.

Affirmed in part, vacated in part, and remanded.


ANDERSON, J., took no part in the consideration or decision of this case.